E-FILED
Friday, 05 June, 2020  02:19:23 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 15-cr-30039** |
| | ) | |
| **JOHNNELL SMITH,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Johnnell Smith's Amended

Motion for Compassionate Release (d/e 76) requesting a reduction

in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A).

For the reasons set forth below, the motion is GRANTED.

## I. BACKGROUND

On December 17, 2015, Defendant pleaded guilty to one count

of aiding and abetting the possession with intent to distribute

heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 18

U.S.C. § 2(a).  On April 18, 2016, the Court sentenced Defendant to

120 months' imprisonment and 8 years of supervised release.

Defendant is currently serving his sentence at FCI Yazoo City Low

in Yazoo City, Mississippi, and has a projected release date of April 11, 2024.

According to the Presentence Investigation Report (PSR) prepared for Defendant's sentencing, Defendant was diagnosed with sleep apnea, hypertension, and morbid obesity.  PSR ¶¶ 97-99.  The BOP medical records attached to Defendant's Amended Motion for Compassionate Release confirm these diagnoses and also show that Defendant has been diagnosed with Type II diabetes.  See d/e 78.

On May 26, 2020, Defendant filed a pro se motion for compassionate release (d/e 73) pursuant to 18 U.S.C. § 3582(c)(1)(A).  On June 1, 2020, following the appointment of the Federal Public Defender's Office to represent Defendant, an Amended Motion for Compassionate Release  (d/e 76) was filed. Defendant requests compassionate release due to his health issues and the COVID-19 pandemic.  Defendant also requests that the Court waive the exhaustion requirement found at 18 U.S.C. § 3582(c)(1)(A).  Defendant's amended motion does not indicate whether he previously made a request for compassionate release to the Warden of FCI Yazoo City.

If released from custody, Defendant plans to reside with his

girlfriend at a residence in Springfield.  The United States Probation Office, in a Memorandum (d/e 79) addressing Defendant's request for compassionate release, found Defendant's release plan to be suitable.

On June 5, 2020, the Court held a video conference hearing on Defendant's motion.  The Court heard oral arguments from counsel and a statement made by Defendant.

As of June 5, 2020, the Bureau of Prisons (BOP) reports that FCI Yazoo City Low has twelve confirmed cases of COVID-19, consisting of six inmates and six staff members.  See Federal Bureau of Prisons – COVID-19 Cases, https://www.bop.gov/coronavirus/ (last accessed June 5, 2020).

The Government objects to Defendant's request, arguing that this Court lacks jurisdiction to hear Defendant's motion as Defendant has not exhausted his administrative remedies under § 3582(c)(1)(A).  The Court finds that it has jurisdiction to hear Defendant's motion and the exhaustion requirement of § 3582(c)(1)(A) can be waived.

## II. ANALYSIS

As a general matter, the Court is statutorily prohibited from

modifying a term of imprisonment once it has been imposed.  See 18 U.S.C. § 3582(c).  However, several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met.  See 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory language at 18 U.S.C. § 3582(c)(1)(A).  See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194.  Prior to the First Step Act, the Court could grant a defendant compassionate release only if the Director of the BOP filed a motion seeking that relief.  With the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now allows an inmate to file with the Court a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for BOP to file a motion or waiting thirty days from when the inmate made his or her request, whichever is earlier.  The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of

imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Here, Defendant has failed to satisfy either exhaustion requirement, as he has not made a request for compassionate release to the warden of his facility. Defendant argues that the Court has the authority to waive compliance with the statutory exhaustion requirement. Def.'s Mot. for Compassionate Release 8. The Government disagrees and argues that the Court lacks jurisdiction to hear the motion as exhaustion is mandatory based on the plain language of the statute. See Resp. 5-6, d/e 80.

Below, the Court addresses whether it has jurisdiction to consider Defendant's motion, whether the Court can waive the exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A), and whether Defendant is entitled to compassionate release.

## A.    Jurisdiction

Federal district courts are "courts of limited jurisdiction."

Exxon Mobil Corp. v. Allapattah Servs. Inc., 545 U.S. 546, 552

(2005).  Without jurisdiction, this Court cannot hear Defendant's

request for compassionate release.  See Henderson ex rel.

Henderson v. Shinseki, 562 U.S. 428, 434 (2011).

An important distinction exists as to whether a procedural

rule is a jurisdictional requirement or a claim-processing rule.  See

id. ("This question is not merely semantic but one of considerable

practical importance for judges and litigants."); Reed Elsevier, Inc.

v. Muchnick, 559 U.S. 154, 160 (2010).  Therefore, "a rule should

not be referred to as jurisdictional unless it governs a court's

adjudicatory capacity, that is, its subject-matter or personal

jurisdiction."  Henderson, 562 U.S. at 435.  Claim-processing rules

"seek to promote the orderly progress of litigation by requiring that

the parties take certain procedural steps at certain specified times."

Id.

The U.S. Supreme Court adopted a "bright-line" test for

deciding when to classify a procedural rule as jurisdictional.

Arbaugh v. Y & H Corp., 546 U.S. 500, 515-16 (2006).  The inquiry

is whether Congress has "'clearly state[d]'" that the rule is jurisdictional." Sebelius v. Auburn Reg'l Med. Ctr., 568 U.S. 145, 153 (2013).  "Absent such a clear statement . . . courts should treat the restriction as nonjurisdictional in character." Id.

In United States v. Taylor, the Seventh Circuit held that 18 U.S.C. § 3582(c)(2) sets forth a nonjurisdictional rule, overruling previous cases decided by the Seventh Circuit.  778 F.3d 667, 671-72 (7th Cir. 2015) ("A district court has subject-matter jurisdiction to consider a motion for relief under 18 U.S.C. § 3582(c)(2) regardless of whether the moving defendant is actually eligible for such discretionary relief.").  Section 3582(c)(2) allows the Court to reduce a term of imprisonment if the defendant was sentenced based on a sentencing range that was subsequently lowered by the United States Sentencing Commission.  18 U.S.C. § 3582(c)(2).

While Taylor did not address § 3582(c)(1)(A), Taylor's reasoning is equally applicable to this statutory subsection.  The Court finds that Congress did not "clearly state" in § 3582(c)(1)(A) that the exhaustion requirement is jurisdictional.  Therefore, the Court finds that the exhaustion requirement found in 18 U.S.C. § 3582(c)(1)(A) is a claim-processing rule, not a jurisdictional rule.  See Henderson,

562 U.S. at 435 (noting that claim-processing rules merely require "that the parties take certain procedural steps at certain specified times"); United States v. Haney, No. 19-cr-541, 2020 WL 1821988, at *2 (S.D.N.Y. Apr. 13, 2020) ("[T]he exhaustion requirement in § 3582(c)(1)(A) merely controls who -- the BOP or defendant -- may move for compassionate release and when such a motion may be made.").

## B.   Waiver of the Exhaustion Requirement

Although the Court has jurisdiction to hear Defendant's motion, Defendant has not met the exhaustion requirement set forth in § 3582(c)(1)(A).  The Court must determine whether it has the authority to waive the thirty-day period of the exhaustion requirement.  The Government argues that only it has the power to waive the thirty-day requirement, not the Court.

In the short time the COVID-19 pandemic has wreaked havoc on this country, many federal judges have considered this issue. Some judges have found that they have the discretion to waive the thirty-day requirement in light of the serious risks associated with COVID-19.  See, e.g., United States v. Scparta, No. 18-cr-578, 2020 WL 1910481 (S.D.N.Y. Apr. 19, 2020); United States v. Guzman

Soto, No. 1:18-cr-10086-IT, 2020 WL 1905323 (D. Mass. Apr. 17,

2020); United States v. Russo, No. 16-cr-441, 2020 WL 1862294

(S.D.N.Y. Apr. 14, 2020); United States v. Smith, No. 12 Cr. 133,

2020 WL 1849748 (S.D.N.Y. Apr. 13, 2020); United States v. Wen,

No. 6:17-CR-06173, 2020 WL 1845104, at *4-7 (W.D.N.Y. Apr. 13,

2020); United States v. Haney, No. 19-cr-541, 2020 WL 1821988, at

*1 (S.D.N.Y. Apr. 13, 2020); United States v. Sawicz, No. 08-cr-287,

2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020); United States v.

McCarthy, No. 3:17-CR-0230, 2020 WL 1698732 (D. Conn. Apr. 8,

2020); United States v. Colvin, No. 3:19cr179, 2020 WL 1613943,

at *2 (D. Conn. Apr. 2, 2020); United States v. Perez, No. 17 Cr.

513-3, 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020).  Other judges

have held that the thirty-day requirement is mandatory, not subject

to any exception.  See, e.g., United States v. Cox, No. 4:18-cr-

00017, 2020 WL 1923220, at *1 (S.D. Ind. Apr. 21, 2020); United

States v. Demaria, No. 17 Cr. 569,  2020 WL 1888910 (S.D.N.Y.

Apr. 16, 2020); United States v. Rensing, No. 16 CR 442, 2020 WL

1847782, at *1 (S.D.N.Y. Apr. 13, 2020); United States v. Roberts,

No. 18-CR-528-5, 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020);

United States v. Woodson, No. 18-cr-845, 2020 WL 1673253, at *2

(S.D.N.Y. Apr. 6, 2020).

Equitable exceptions to statutory rules have been recognized in the past.  See Holland v. Florida, 560 U.S. 631, 645-46 (2010) (noting that "a nonjurisdictional federal statute of limitations is normally subject to a rebuttable presumption in favor of equitable tolling"); Hamer v. Neighborhood Hous. Servs. of Chicago, 138 S. Ct. 13, 18 n.3 (2017) (reserving on the issue of "whether mandatory claim-processing rules may be subject to equitable exceptions" other than waiver and forfeiture).  Other circuit courts have recognized equitable exceptions since the Supreme Court's decision in Ross v. Blake, 136 S. Ct. 1850 (2016).  See Grewal v. Cuneo Gilbert & LaDuca LLP, No. 19-448, 2020 WL 897410, at *1 (2d Cir. Feb. 25, 2020) ("We have held that Rule 4(a)'s 28-day deadline is not jurisdictional, but is a 'claim-processing rule' and, as such, its enforcement is subject to waiver, forfeiture, and other equitable exceptions."); Fed. Ins. Co. v. United States, 882 F.3d 348, 361 (2d Cir. 2018) ("Claim-processing rules, much like statutes of limitations, . . . may be subject to equitable tolling doctrines.").  In Scparta, the Government recognized that the exhaustion requirement is subject to a waiver exception but took the position

that only the Government, not the court, can waive exhaustion.
2020 WL 1910481, at *5.

The Government urges the Court to consider the plain
language of the statute to establish that the exhaustion remedy is
mandatory.  The Government relies on <u>Ross</u> to argue that the Court
does not have discretion to create an exception to the exhaustion
requirement.  In <u>Ross</u>, the Supreme Court considered the
exhaustion requirements of the Prison Litigation Reform Act (PLRA),
which stated that "no action shall be brought with respect to prison
conditions . . . until such administrative remedies as are available
are exhausted."  136 S. Ct. at 1856.  The Supreme Court held that
the exhaustion of administrative remedies was mandatory because
the statutory language "suggest[ed] no limits on an inmate's
obligation to exhaust."  <u>Id.</u>  As in <u>Ross</u>, the exhaustion requirement
at issue here is imposed by statute, not case law, so the Court has
less authority to recognize exceptions.  <u>Id.</u> at 1857 ("[J]udge-made
exhaustion doctrines, even if flatly stated at first, remain amenable
to judge-made exceptions.  But a statutory exhaustion provision
stands on a different footing.  There, Congress sets the rules—and
courts have a role in creating exceptions only if Congress wants

them to.") (citation omitted).

The statutory text of § 3582(c)(1)(A) and the congressional intent for implementing amendments to that section substantially differ from the PLRA.  With respect to the PLRA, Congress amended 42 U.S.C. § 1997e(a) to make "exhaustion provisions mandatory." Historical and Statutory Notes, 42 U.S.C.A. § 1997e (West Supp. 1997).  Quite the opposite is true for § 3582(c)(1)(A), as the First Step Act extended to inmates the ability to file motions for compassionate release.

In addition, as recognized in Haney, § 3582(c)(1)(A) is not "an exhaustion requirement in the traditional sense."  2020 WL 1821988, at *3.  Section 3582(c)(1)(A) does not require a defendant to fully exhaust BOP procedures before coming to court.  The PLRA, on the other hand, does require an inmate to completely exhaust available administrative remedies.  See Guzman Soto, 2020 WL 1905323, at *5 ("This alternative to exhaustion suggests that Congress understood that some requests for relief may be too urgent to wait for the BOP's process."); Haney, 2020 WL 1821988, at *3 ("But the hybrid requirement in this statute – either exhaust or wait 30 days – substantially reduces the importance of the first

purpose, as it allows a defendant to come to court before the agency has rendered a final decision.").  This Court agrees with the reasoning expressed in <u>Guzman Soto</u>, which provided:

> While a court may certainly decline to consider a motion where Defendant has not waited thirty days, nothing in the statutory scheme suggests that Congress intended to preclude the court from exercising judicial discretion and to take into account timeliness and exigent circumstances related to why the defendant seeks compassionate release.

<u>Guzman Soto</u>, 2020 WL 1905323, at *5.

Mandating the exhaustion requirement in this case and other cases around the country during the COVID-19 pandemic cannot be what Congress intended.  Based on the House Report for the First Step Act, the statute is designed to "enhance public safety" and "make . . . changes to Bureau of Prisons' policies and procedures to ensure prisoner and guard safety and security."  H.R. Rep. 115-699 at 22; <u>see also</u> <u>Scparta</u>, 2020 WL 1910481, at *7. Denying Defendant's motion without reaching the merits, only to order Defendant to wait to refile his request with this Court, would certainly frustrate these purposes.  In that time, Defendant is at a high risk of contracting a potentially deadly illness based on the realities of BOP facilities, causing irreparable harm and rendering

his request for compassionate release futile.

The Court concludes that § 3582(c)(1)(A) does not require the Court to wait to consider a compassionate release request if there is a credible claim of serious and imminent harm from this pandemic. That does not mean the Court will waive the thirty-day period in all cases. The decision must be made on a case-by-case basis. In this case, the Court finds that the thirty-day requirement should be waived. The Court excuses Defendant's failure to wait thirty days from the receipt of his request by the warden of his facility to seek relief pursuant to 18 U.S.C. § 3582(c)(1)(A).

**C.    Eligibility for Compassionate Release**

As Defendant's motion is properly before the Court, the next issue is whether Defendant is eligible for compassionate release. For Defendant to be eligible for compassionate release, the Court, after considering the relevant factors set forth at 18 U.S.C. § 3553(a), must determine that "extraordinary and compelling reasons" warrant a reduction in Defendant's term of imprisonment and that the reduction is "consistent with applicable policy statements issues by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

1.   <u>Extraordinary and Compelling Reasons for Release</u>

The spread of COVID-19 has presented extraordinary and unprecedented challenges for the country and poses a serious issue for prisons.  Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene and social distancing and isolation.  Socially distancing can be difficult for individuals living or working in a prison.

Defendant is a thirty-seven-year-old African American man who is five feet eleven inches tall and weighs 321 pounds according to the most recent BOP medical records, which is considered to be severely obese.  Besides obesity, Defendant suffers from hypertension, diabetes, and sleep apnea.  The CDC has identified severe obesity and diabetes as comorbidities that increase the likelihood of serious risk from COVID-19.  <u>See</u> Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last accessed June 5, 2020) ("Patients in China with no reported underlying medical conditions

had an overall case fatality of 0.9%, but case fatality was higher for patients with comorbidities: 10.5% for those with cardiovascular disease, 7.3% for diabetes, and approximately 6% each for chronic respiratory disease, hypertension, and cancer.  Heart disease, hypertension, prior stroke, diabetes, chronic lung disease, and chronic kidney disease have all been associated with increased illness severity and adverse outcomes."); Scparta, 2020 WL 1910481, *9.

The Court begins with the factors set out in 18 U.S.C. § 3553(a).  Defendant is currently serving a 120-month term of imprisonment for aiding and abetting the possession with intent to distribute heroin.

Defendant has been in custody since August 17, 2015. According to BOP records, Defendant is scheduled to be released on April 11, 2024.  In his pro se motion, Defendant sets forth a reentry plan which includes securing housing and finding employment. The Court has considered the factors in § 3553(a) and concludes that they entitle Defendant to compassionate release.

2.    Sentencing Commission Policy Statements

The relevant policy statement, § 1B1.13 of the Sentencing

Guidelines, explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that "(1)(A) extraordinary and compelling reasons warrant the reduction; . . . (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) the reduction is consistent with this policy statement."  U.S.S.G. § 1B1.13 (2018).

The commentary to § 1B1.13 provides certain circumstances constituting "extraordinary and compelling reasons" that warrant a sentence reduction.[1]  U.S.S.G. § 1B1.13 cmt. n.1.  One of the circumstances is where a defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 cmt. n.1(A).  Another circumstance is

---

1 The Court notes that § 1B1.13 of the Sentencing Guidelines has not been amended to reflect all of the additional language added to 18 U.S.C. § 3582(c)(1)(A).  As it stands, § 1B1.13 only refers to a reduction "upon the motion of the Director of the Bureau of Prisoners," which is not the situation here.  No sentencing policy provides guidance for when a defendant files a motion.  Nevertheless, the Court still considers § 1B1.13.

where "an extraordinary and compelling reason other than, or in combination with," the listed circumstances is present. U.S.S.G. § 1B1.13 cmt. n.1(D).  As discussed above, in this case, Defendant has serious underlying physical and medical conditions which are present in combination with the extraordinary and compelling reason presented by the COVID-19 pandemic.

The Court also considers whether Defendant is a danger to the safety of any other person or to the community.  <u>See</u> U.S.S.G. § 1B1.13.  According to Probation's Memorandum, Defendant has been disciplined three times while in BOP custody, but none of the three infractions involved violence.  Defendant has no prior criminal convictions for crimes of violence.  Additionally, if released, if Defendant quarantines himself at his residence and practices social distancing, that will diminish the risk of spreading the virus.

Therefore, the Court finds that Defendant has satisfied all requirements for compassionate release.

### III. CONCLUSION

For the reasons set forth above, Defendant Johnnell Smith's Amended Motion for Compassionate Release (d/e 76) is GRANTED. The Court hereby reduces Defendant's term of imprisonment in this

case from 120 months to time served.  The Court modifies

Defendant's conditions of supervised release to require Defendant to

spend 6 months in home confinement, with the first 14 days to be

spent in isolation.  The home confinement shall start as soon as

possible after his term of supervised release begins.  During his

term of home confinement, Defendant shall be monitored by

telephone until such time as it is practicable to implement

electronic monitoring.  All other aspects of Defendant's sentence

shall remain the same.  Defendant's pro se motion for

compassionate release (d/e 73) is DENIED as MOOT.

The Bureau of Prisons is ORDERED to immediately test

Defendant for COVID-19.  The Bureau of Prisons is ORDERED to

release Defendant within 24 hours if Defendant tests negative for

COVID-19.  The Clerk is DIRECTED to send a copy of this Opinion

to FCI Yazoo City Low.  Defendant must self-quarantine for a period

of 14 days beginning at the time of his release, including while he

travels from FCI Yazoo City Low to his residence.  Defendant shall

travel to Springfield, Illinois, in a vehicle with three-row seating that

allows him to follow the CDC's social distancing guidelines, which

include staying at least six feet from others and wearing a face

mask and gloves.


ENTER:  June 5, 2020

*/s/ Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE